IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LAURIE ROSENKRANZ, | ) | CASE NO. 1:13-cv-00535 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| COMMISSIONER OF SOCIAL, | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | **MEMORANDUM OPINION & ORDER** |
| Defendant. | ) | |

Plaintiff Laurie Rosenkranz ("Plaintiff" or "Rosenkranz") seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her Social Security Insurance Benefits ("SSI").  Doc. 1, Tr. 76.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This matter has been referred to the undersigned Magistrate Judge pursuant to the consent of the parties.  Doc. 14.

For the reasons stated below, the Commissioner's decision should be **AFFIRMED**.

## I.  Procedural History

Rosenkranz protectively filed[1] an application for SSI on June 2, 2011, alleging a disability onset date of December 1, 2009.  Tr. 201.  Her application was denied by the state agency initially and on reconsideration (Tr. 76-91).  On July 25, 2012, a hearing was held before

---

[1] Protective filing is a Social Security term for the first time you contact the Social Security Administration to file a claim for disability or retirement. Protective filing dates may allow an individual to have an earlier application date than the actual signed application date. This is important because protective filing often affects the entitlement date for disability and retirement beneficiaries along with their dependents.
http://www.ssdrc.com/disabilityquestionsmain20.html (Last visited 3/05/14).

1

Administrative Law Judge ("ALJ") Mason Hogan.  Tr. 38-62.  In his August 30, 2012, decision, the ALJ determined that Rosenkranz's residual functional capacity ("RFC") did not prevent her from performing her past relevant work and, alternatively, work existing in significant numbers in the national economy, i.e., she was not disabled.  Tr. 30.  Rosenkranz requested review of the ALJ's decision by the Appeals Council.  Tr. 16.  On January 16, 2013, the Appeals Council denied Rosenkranz's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 2-5.

## II. Evidence

### A. Personal and Vocational Evidence

Rosenkranz was 50 years old at the time of the 2012 hearing.  Tr. 43.  She attended 12th grade but did not graduate from high school.  Tr. 43.  She previously worked full-time in 2000 as a hand packager at a meat packing company.  Tr. 45, 57.

### B. Relevant Medical Evidence

#### 1. Rosenkranz's Treating sources

##### a. Easter Seals UCP ("UCP")

On May 31, 2011, Rosenkranz presented to UCP, where she was evaluated by licensed clinical social worker Henry W. Shyllon, L.C.S.W.  Tr. 276.  Mr. Shyllon found Rosenkranz to be alert, depressed, and anxious.  Tr. 281-82.  She was diagnosed with Major Depression, Post-Traumatic Stress Disorder ("PTSD"), and alcohol and cannabis abuse.  Tr. 287.  It was recommended that she attend therapy for her depression and substance abuse.  Tr. 291.  On June 28, 2011, Rosenkranz returned to UCP, reporting that she was dependent on Prozac since 2009, but she had never participated in therapy or required psychiatric hospitalization.  Tr. 383.  On

2

September 13, 2011, Rosenkranz again presented to UCP reporting that her current medication regime (Prozac and Trazodone) was proving effective.  Tr. 382.

At a November 14, 2011 UCP visit Rosenkranz reported continuing depression and had increased her dosage of Prozac on her own.  Tr. 417.   She reported improvement in her mood with the increased dosage.  Id.  Treating psychiatrist Bernard Eaton, M.D., diagnosed Rosenkranz with Major Depression, recurrent; PTSD; and Personality Disorder and recommended she continue taking the increased dosage of Prozac.  Id.  From January 2012 through March 2012, Rosenkranz presented to UCP for individual counseling and medication management.  Tr. 525-29.  Rosenkranz reported continuing problems with depression and anxiety.  Tr. 528.

### b.  Sampson Regional Medical Center ("Sampson")

On May 31, 2011, Rosenkranz presented to Sampson's Emergency Department where she stated that she needed medication because she was "a nervous wreck" and had no money for her medications.  Tr. 304, 308.  Multiple bruises were noted on her upper and lower extremities.  Tr. 304.  She received the requested medications.  Tr. 306.

On August 17, 2011, Rosenkranz returned to Sampson's Emergency Department and underwent an appendectomy due to a perforated appendix.  Tr. 331.  Rosenkranz remained at Sampson for about a week.  Tr. 406.

### c.  Goshen Medical Center – Dr. Chavis

On July 7, 2010, Rosenkranz presented to Kenyon Chavis, M.D., as a new patient.  Tr. 403.  Rosenkranz complained of breast pain and dental pain.  Id.  She was prescribed antibiotics for a tooth abscess and a pain reliever for her breast pain.  Tr. 405.  Rosenkranz was also found to be depressed and prescribed Prozac.  Tr. 404-405.

Rosenkranz's next visit to Dr. Chavis was on October 18, 2011, post-appendectomy. Tr. 406-410. Rosenkranz reported weakness post-surgery but no pain, chills, diarrhea, fever, or vomiting. Tr. 406. Dr. Chavis described Rosenkranz's mood and affect as stable. Tr. 407. On December 14, 2011, Rosenkranz complained of abdominal pain and nausea but reported no change in bowel habits. Tr. 419. On February 1, 2012, Rosenkranz complained of abdominal pain, nausea, and diarrhea. Tr. 520. Dr. Chavis diagnosed her with Irritable Bowel Syndrome ("IBS"). Tr. 521. Dr. Chavis also found that Rosenkranz's mood and affect were sad and advised her to continue on her current medications for treating her Major Depressive Disorder. Tr. 523.

On June 12, 2012, Dr. Chavis completed a Physical RFC questionnaire. Tr. 530-535. In the questionnaire, he indicated diagnoses of Depression and Cerebrovascular Accidents ("CVAs"). Tr. 530. Dr. Chavis opined that Rosenkranz is incapable of even low stress jobs due to depression and anxiety. Tr. 531. Dr. Chavis opined that Rosenkranz could not sit or stand longer than two hours and could never carry 10 pounds or greater. Tr. 532, 533. Dr. Chavis also indicated Rosenkranz could not twist, stoop, crouch, or climb ladders. Tr. 534. Overall, Dr. Chavis opined that Rosenkranz was incapable of any full-time work. Tr. 535.

### 2. State Agency Opinions

On September 26, 2011, state agency consultant Lori Brandon Souther, Ph.D., reviewed Rosenkranz's medical records and completed a Psychiatric Review Technique and Mental RFC. Tr. 68-69, 71-73. Dr. Souther found Rosenkranz's mental health allegations partially credible. Tr. 66. Dr. Souther determined that Rosenkranz was moderately impaired in activities of daily living; maintaining social functioning; and maintaining concentration, persistence, or pace. Tr.

68. Dr. Souther opined that Rosenkranz retains the capacity to perform work in a low-stress environment with minimal social demands. Tr. 73.

On January 24, 2012, state agency consultant Ken W. Wilson, Psy.D., reviewed the medical records and completed a Psychiatric Review Technique and Mental RFC. Tr. 82-83, 86-88. Dr. Wilson determined that Rosenkranz's complaints of functional limitations from her mental conditions were partially credible. Tr. 83, 88. He found Rosenkranz was mildly limited in her activities of daily living and moderately limited in social functioning and maintaining concentration, persistence, or pace. Tr. 83. Dr. Wilson opined that Rosenkranz "can accept non-confrontational direction from a supervisor and maintain adequate relationships with co-workers in a work setting with minimal social interaction requirements and only casual public contact." Tr. 87. He further opined that Rosenkranz "should be able to adapt to minor changes associated with the performance of simple tasks in a stable work setting in a position that is not highly production oriented or socially demanding." Id. Dr. Wilson also opined that Rosenkranz could maintain concentration for simple tasks. Id.

On January 24, 2012, state agency consultant Melvin L. Clayton, M.D., completed a physical RFC. Tr. 84-85. Dr. Clayton found Rosenkranz's allegations that she can't work due to a heart condition and CVAs partially credible. Tr. 85. Dr. Clayton stated that the medical evidence showed one CVA on an MRI in 2009, but no other evidence of three strokes, as alleged. Id. Dr. Clayton opined that due to complications with Rosenkranz's appendectomy, "it can be expected that she might not be capable of working currently, but after one year of surgery, she would be able to perform medium work." Id.

### C. Relevant Testimonial Evidence

#### 1. Rosenkranz Testimony

At the administrative hearing, Rosenkranz was represented by counsel and testified that her longest employment was seven or eight months as a packer in a meat packing plant in 2000. Tr. 45. Rosenkranz testified that she believes she is unable to work due to depression, back pain, and IBS. Tr. 46-47. She stated that she generally mows the lawn, grocery shops three or four times a month, goes to church every week for three hours, watches television, cooks, and takes care of her pets. Tr. 50-53. She testified that she has to take frequent breaks while mowing the lawn due to her back pain and that she sometimes forgets to feed her pets or forgets that she left food on the stove. Tr. 50, 52-53.

#### 2. Vocational Expert's Testimony

Vocational Expert Bob Lester ("VE") testified at the hearing. Tr. 46, 57-61. The VE testified that Rosenkranz's past work as a hand packager at a meat packing plant was perform at a medium exertional level. Tr. 57. The ALJ then asked the VE to assume an individual of Rosenkranz's age, education, and work experience who could sit for six hours out of an eight-hour day; stand and/or walk for six hours out of an eight-hour day; lift and carry 50 pounds occasionally and 25 pounds frequently; should avoid concentrated exposure to hazards, such as unprotected heights and dangerous machinery; who would be limited to understanding, remembering, and carrying out simple instructions (consistent with the reasoning level of two or three as defined in the Dictionary of Occupational Titles); who could work in proximity to, but not coordination with, coworkers and supervisors; who is limited to low stress work, defined as no fast-paced production, only simple work related decisions, few or no changes in the work setting and only superficial contact with the public. Tr. 57. The VE testified that such a

hypothetical individual could perform Rosenkranz's past work as a hand packager. Tr. 57. The VE testified that such an individual could also perform work as an industrial cleaner (165,000 national jobs, 3,500 regional jobs[2]), a storage laborer (100,000 national jobs, 4,000 regional jobs), and a laundry worker (95,000 national jobs, 3,000 regional jobs). Tr. 58.

The ALJ asked a second hypothetical where he added to the first hypothetical a limitation that, due to a combination of mental and physical impairments, the individual would be off-task or missing work twenty percent of the time. Tr. 58. The ALJ asked if the additional limitations would impact the jobs available. Id. The VE responded, yes. Id. The ALJ then asked a third hypothetical. The ALJ requested the VE assume an individual of Rosenkranz's age, education, and work experience who could sit for six hours out of an eight-hour day; stand and/or walk for six hours out of an eight-hour day; would require flexibility to alternate between sitting and standing every two hours; who can lift and carry 10 pounds occasionally and less than 10 pounds frequently; who can push and pull in accordance with the lifting and carrying limitations; who should never climb ladders, scaffolding, or ropes but could occasionally climb ramps or stairs; could occasionally balance, stoop, kneel, crouch, but never crawl; who should avoid concentrated exposure to hazards, such as unprotected heights and dangerous machinery; who would be limited to understanding, remembering, and carrying out simple instructions (consistent with the reasoning level of two or three as defined in the Dictionary of Occupational Titles); who could work in proximity to, but not in coordination with, coworkers and supervisors; who is limited to low stress work, defined as no fast-paced production, only simple work related decisions, few or no changes in the work setting and only superficial contact with the public. Tr. 59. The VE testified that such a hypothetical individual could not perform Rosenkranz's past

---

[2] The region was defined as the State of North Carolina, the state where the application was filed and where the hearing took place. Tr. 40, 58, 243. It appears that Plaintiff now resides in Ohio. Tr. 1.

work. Id. The VE testified that such a hypothetical individual could perform work as clerical assistance/general office helper (95,000 national jobs, 2,500 regional jobs), a routing clerk (76,000 national jobs, 2,000 regional jobs), and a nonpostal mail clerk (50,000 national jobs, 1,000 regional jobs). Tr. 60.

### III. Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

    4.      If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

    5.      If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920[3]; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987). Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the vocational factors to perform work available in the national economy. *Id.*

### IV. The ALJ's Decision

In his August 30, 2012, decision, the ALJ made the following findings:

    1.      The claimant has not engaged in substantial gainful activity since June 2, 2011, the application date. Tr. 23.

    2.      The claimant has the following severe impairments: late effects of cerebrovascular disease, essential hypertension, depression, post-traumatic stress disorder, personality disorder. Tr. 23.

    3.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of the one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.[4] Tr. 23.

---

[3] The DIB and SSI regulations cited herein are generally identical. Accordingly, for convenience, further citations to the DIB and SSI regulations regarding disability determinations will be made to the DIB regulations found at 20 C.F.R. § 404.1501 et seq. The analogous SSI regulations are found at 20 C.F.R. § 416.901 et seq., corresponding to the last two digits of the DIB cite (i.e., 20 C.F.R. § 404.1520 corresponds to 20 C.F.R. § 416.920).

[4] The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P, App. 1, and describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. § 404.1525.

4. The claimant has the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. 404-1567(c) except she is limited to jobs that do not require concentrated exposure to workplace hazards such as unprotected heights or dangerous machinery; mentally claimant is limited to understanding, remembering, and carrying out simple instructions, is able to work in proximity to, but not in coordination with, coworkers and supervisors; she is limited to work in a low stress environment, defined as no fast paced production with only simple work related decisions, few or no changes in work setting and only superficial contact with the public. Tr. 24.

5. The claimant is capable of performing past relevant work as a hand packager. This work does not require the performance of work-related activities precluded by the claimant's [RFC].[5] Tr. 30.

6. The claimant has not been under a disability, as defined in the Social Security Act, since June 2, 2011, the date the application was filed. Tr. 32.

The ALJ's decision became the final decision of the Acting Commissioner when the Appeals Council denied Anthony's required for review on January 16, 2013. Tr. 2.

### V. Parties' Arguments

### A. Plaintiff's Arguments

Rosenkranz presents five issues for review. First, Rosenkranz argues that the ALJ's finding that she cannot work in coordination with coworkers and supervisors rules out all work under agency rules. Doc. 15, p. 3. Second, Rosenkranz contends that the ALJ erred in finding that her IBS did not meet the 12-month durational requirement. Id. Next, Rosenkranz contends that the ALJ erred in his credibility finding. Id. at p.4. Rosenkranz also argues that the ALJ erred by failing to require that the demands of her past work be compared function-by-function with her abilities. Id. at 5. Finally, Rosenkranz argues that the ALJ erred by not addressing why

---

[5] The ALJ also found that, "In the alternative, considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant also can perform." Tr. 31.

he did not accept the limitation presented in a hypothetical that she would be off-task or miss work twenty percent of the time. Id. at 6.

**B.  Defendant's Arguments**

In response, the Commissioner argues that the ALJ's RFC assessment was supported by substantial evidence. Doc. 17, p. 11.

**VI. Law & Analysis**

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Secretary of Health and Human Services,* 889 F.2d 679, 681 (6th Cir.1989) (per curiam) (citations omitted)). A court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

**A.  The ALJ's social functioning limitation in the RFC does not preclude all work.**

The ALJ provided a limitation in Rosenkranz's RFC that she "is able to work in proximity to, but not in coordination with, coworkers and supervisors." Tr. 24. Rosenkranz argues that pursuant to SSR 85-15, this precludes all work. Doc. 15, p. 3. SSR 85-15 provides in relevant part,

> Example 1: A person whose vocational factors of age, education, and work experience would ordinarily be considered favorable (i.e., very young age, university education, and highly skilled work experience) would have a severely limited occupational base if he or she has a mental impairment which causes a substantial loss of ability to respond appropriately to supervision, coworkers, and usual work situations. A finding of disability would be appropriate.

Rosenkranz's argument is flawed for the following reasons. First, the Sixth Circuit has found that SSR 85-15 applies to cases where only a nonexertional limitation is present. *Doneworth v. Shalala*, 76 F.3d 378 *4 (6th Cir. 1996) ("SSR 85-15 has no application to [claimant] because she claims both exertional and nonexertional impairments.") Since Rosenkranz is asserting both exertional and nonexertional impairments, SSR 85-15 does not apply to her. *Id.* Second, the ALJ's finding that Rosenkranz can work "in proximity to, but not in coordination with…supervisors" does not mean that Rosenkranz has a "substantial loss of ability to respond appropriately to supervision." The VE specified that he interpreted the limitation "work[ing] in proximity to, but not in coordination with…" to mean that, "you're working in coordination from the standpoint that somebody is telling you what to do and accepting your completed product, but you're still doing the job in a one on one situation or solitary manner." Tr. 60. Under that interpretation, the VE determined that such a limitation in the RFC did not prevent Rosenkranz from performing work existing in significant numbers in the national economy. Tr. 60. Accordingly, the ALJ's RFC determination that Rosenkranz "is able to work in proximity to, but not in coordination with, coworkers and supervisors" and that such a limitation does not preclude all work, is supported by substantial evidence.

### B. The ALJ appropriately evaluated Rosenkranz's IBS

Impairments must meet a durational requirement that, "[u]nless [an] impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. Rosenkranz argues that the ALJ erred by not

12

evaluating whether her IBS would be expected to last twelve months. Doc. 15, p. 3. Under the Social Security regulations Rosenkranz bears the burden of proving disability including furnishing medical and other evidence of the existence of such disability:

> In general, you have to prove to us that you are…disabled. Therefore, you must bring to our attention everything that shows that you are…disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairments and…its effect on your ability to work on a sustained basis.

42 C.F.R. § 404.1512(a); *See also* 42 C.F.R. § 423(d)(5)(A); 20 C.F.R. § 416.912(a); *Tyra v. Sac's of Health & Human Serves.,* 896 F.2d 1024, 1028 (6th Cir. 1990) (stating that the claimant bears the burden of proving that she is disabled within the meaning of the Act).

Dr. Chavis diagnosed Rosenkranz with IBS in February 2012. Tr. 28, 521. Dr. Chavis determined that the IBS had started only several weeks prior. Tr. 522. Rosenkranz testified that the IBS arose after her appendectomy. Tr. 47. No medical source opined that Rosenkranz's IBS would last, or be expected to last, for 12 months or longer, or that it caused any functional limitations. Rather, Dr. Chavis filled out a Physical Residual Functional Capacity Questionnaire on Rosenkranz's behalf in June of 2012 (six months after her IBS diagnosis) and did not list IBS as a diagnosis or indicate that the IBS would provide functional limitations. Tr. 530. State agency consultant Dr. Clayton also reported that "[d]use to the complicated appendectomy (sic) it can be expected that [Rosenkranz] might not be capable of working currently, but one year after surgery, she would be able to perform medium work." Tr. 85.

Based on the above, the ALJ did not err in finding that Rosenkranz's IBS fails to meet the durational requirement (Tr. 28) as Rosenkranz's provided no evidence in support of this proposition.

### C. The ALJ's credibility determination is supported by substantial evidence

Rosenkranz contends that the ALJ erred in his credibility analysis by not properly evaluating the factors that alleviate or aggravate her symptoms. Doc. 15, p. 4. Rosenkranz argues that the ALJ's decision failed to comply with the following regulations: 20 C.F.R. § 404.1529 and SSR 96-7p. With respect to credibility determinations, 20 C.F.R. § 404.1529 provides:

> In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence, including your history, the signs and laboratory findings, and statements from you, your treating or nontreating source, or other persons about how your symptoms affect you. We also consider the medical opinions of your treating source and other medical opinions as explained in § 404.1527.

Similarly, SSR 96-7p provides:

> 4. In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.
>
> 5. It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7P *1-2 (July 2, 1996).

The ALJ determined that Rosenkranz's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with the RFC determination. Tr. 28. The ALJ found that the record failed to support many of

14

Rosenkranz's allegations. During the hearing, Rosenkranz alleged that she could not work due to her depression, back pain, and IBS. With regard to these issues the ALJ found as follows:

- **Depression.** The medical records reflect that "she responded promptly to treatment by September 2011" and although "subsequent treatment notes document complaints of worsening depression, mental status, as well as comments by mental health personnel, were not indicative of worsening symptoms." Tr. 29.

- **Back pain.** The medical record contains few complains of back pain, Rosenkranz had not been prescribed medication for back pain, and there were no positive medical findings relative to tenderness, muscle spasm, or decreased range of motion. Tr. 28.

- **IBS.** The ALJ stated that the record shows no complaints of gastrointestinal symptoms until December 2012 and no diagnosis of IBS until February 2012. Tr. 28.

In addition to the above mentioned items, the ALJ also noted the following with respect to credibility:

- Although Rosenkranz alleges she suffered three prior strokes, the ALJ found that the medical evidence fails to confirm these strokes. Treatment notes and studies also failed to reveal any findings indicative of stroke residuals.[6] Tr. 28

- Rosenkranz testified that she experiences panic attacks (Tr. 51), however, "she has not been diagnosed with anxiety or as having panic attacks." Tr. 29.

The ALJ's credibility determinations are entitled to great deference because the ALJ had the "unique opportunity to observe" the witness's demeanor while testifying. *Buxton v. Halter,* 246 F.3d 762, 773; *Jones v. Commissioner of Social Sec.,* 336 F.3d 469, 476; *Walters v. Commissioner of Social Sec.,* 127 F.3d 525, 531. On appeal, a reviewing court is "limited to evaluating whether or not the ALJ's explanations for [discrediting the witness] are reasonable and supported by substantial evidence in the record." *Jones,* 336 F.3d at 476. The ALJ's explanations for discrediting Rosenkranz are thorough, reasonable, and supported by substantial evidence. In this case, the evidence in the record was conflicting and required the ALJ to make a credibility determination. Because the ALJ provided specific explanations for his credibility

---

[6] The ALJ stated that, despite his credibility finding, he gave Rosenkranz the benefit of the doubt and found the impairment severe. Tr. 23, 28.

finding, and because his finding was within the zone of reasonable choices, his denial of Rosenkranz's application for benefits must be affirmed. See *Buxton,* 246 F.3d at 773. Considering the evidence as a whole, the ALJ adequately considered Rosenkranz' allegations.

> **D. The ALJ's determination that Rosenkranz is capable of performing jobs that exist in significant numbers in the national economy is supported by substantial evidence**

Rosenkranz argues that the ALJ failed to comply with SSRs 82-62 and 96-8p because he did not conduct a function-by-function comparison of the demands of her past work with her RFC. Doc. 15, p. 5 (citing SSR96-8p). SSR 96-8p provides:

> The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activity.

SSR 82-62 provides:

> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit…for a claim involving a mental/emotional impairment, care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g., speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work. Persons with physical impairments (e.g., cardiovascular or gastrointestinal disorders) may have performed stressful tasks. This may also require a decision as to whether the impairment is compatible with the performance of such work.

However, the Court need not determine this issue. In addition to finding that Rosenkranz is capable of performing her past relevant work as actually and generally performed, the ALJ also alternatively found that Rosenkranz is capable of performing other substantial work existing in the national and local economy. The ALJ specifically relied upon the testimony of the VE that given claimant's age, education, work experience, and RFC an individual would be able to perform work as an industrial cleaner (165,000 jobs nationally, 3,500 jobs statewide); a stores

laborer (100,000 jobs nationally, 4,000 jobs statewide); and laundry worker (95,000 jobs nationally, 3,000 jobs statewide).  Since Rosenkranz does not dispute the ALJ's alternative findings, it is unnecessary to determine whether or not the ALJ was required to perform a function-by-function analysis of her past work because the ALJ's decision that, "…considering claimant's age, education, work experience, and [RFC], the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" is supported by substantial evidence.

### E.  The ALJ was not required to make a finding on all hypothetical questions asked

In Rosenkranz's final argument, she seems to argue that, because the ALJ asked a hypothetical concerning an individual who would be off-task or miss work twenty percent of the time, the ALJ was then required to make a finding as to why this limit should not apply.  Doc. 15, pp. 6-7. In support of this argument, Rosenkranz contends that the ALJ may only ask questions *material* to an issue.  Id. at p. 6.  The Commissioner contends that the ALJ was not required to address this limitation in his decision because Rosenkranz submitted no evidence to support that she would be off-task or miss work twenty percent of the time.  Doc. 17, p. 12.

Rosenkranz cites no cases in support of the proposition that the ALJ must make a finding on all hypothetical questions asked and cites no evidence in the record which would support that she would be off-task or miss work twenty percent of the time.  Accordingly, Rosenkranz's final argument is without merit.

## VII.  Conclusion

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.

Dated:  March 26, 2014

Kathleen B. Burke
United States Magistrate Judge